**LEWIS BRISBOIS BISGAARD & SMITH** LLP
JONATHAN S. PINK, SB# 179685
  E-Mail: Jonathan.Pink@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CROWN IMPORT AND EXPORT LTD. a Hong Kong Corporation <br><br> Plaintiff, <br><br> vs. <br><br> ASCENDANCE APPARELS, LLC, a California Limited Liability Company; MAHESH HARWANI, an Individual; and DOES 1-10, Inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR:** <br> 1.  **BREACH OF CONTRACT;** <br> 2.  **BREACH OF IMPLIED CONTRACT;** <br> 3.  **PROMISSORY ESTOPPEL;** <br> 4.  **FRAUD/MISREPRESENTATION;** <br> 5.  **COMMON COUNT: GOODS AND SERVICES RENDERED;** <br> 6.  **COMMON COUNT: ACCOUNT STATED.** <br><br> Trial Date:      None Set |

Plaintiff Crown Import and Export Ltd., a Hong Kong based corporation, hereby complains and alleges as follows:

## THE PARTIES

1.     Plaintiff Crown Import and Export Ltd. ("Plaintiff" or "Crown") is now, and at all times material hereto has been, a foreign Hong Kong corporation with its principal place of business in RM 1403, 14/F, Perfect Commercial Building, 20 Austin Avenue, Tsim Sha Tsui, Kowloon, Hong Kong.

2.     Defendant Ascendance Apparels, LLC ("Ascendance") is now, and at all times material hereto has been, a limited liability company with its principal place of

4855-5498-0688.1

business in Burbank, Los Angeles County, California.

3.      Defendant Mahesh Harwani ("Mr. Harwani") is now, and at all times material hereto has been, the Chief Executive Officer and sole managing member of Ascendance and resides in North Hollywood, Los Angeles, California.

4.      Plaintiff is informed and believes, and based thereon alleges, that Mr. Harwani was the agent and/or employee of Ascendance, and was, at all times, acting within the purpose and scope of such agency and/or employment, and/or that Mr. Harwani directed, authorized, ratified and/or participated in the acts of, and/or was an alter ego of, Ascendance. Without limiting the foregoing, Plaintiff is informed and believes and, based thereon alleges, that there is such a unity of interest and ownership that the individuality, or separateness, of Ascendance and Mr. Harwani has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances of this case, sanction a fraud or promote injustice.

5.      The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of the defendants named herein as DOES 1 through 10 inclusive, are unknown to Plaintiff who therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and based upon such information and belief alleges, that each of the defendants designated herein referred to, and negligently, tortuously, and unlawfully, proximately caused injury and damages to Plaintiff as alleged herein. Plaintiff will seek leave of Court to amend this Complaint to show these defendants' true names and capacities after the same have been ascertained.

6.      Plaintiff is informed and believes and based thereon alleges, that each defendant was the agent and employee of each other, and in doing the things hereinafter alleged, acted within the scope and course of such agency and employment, and that each defendant has ratified and approved the acts of each

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  other defendant.

2  ## JURISDICTION AND VENUE

3  7.    This Court has jurisdiction over Plaintiff's claims under and pursuant to 28

4  U.S.C. § 1332(a)(2) because Plaintiff and Defendants (collectively, the "Parties"),

5  upon information and belief, Plaintiff is a citizen of Hong Kong, Defendants are

6  citizens of the State of California, and the amount in controversy far exceeds

7  $75,000.00. This Court has personal jurisdiction over Defendants because

8  Defendants reside in California and transact business in California.

9  8.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), and

10  (c) and 1400(a), in that this is the judicial district in which a substantial part of the

11  acts and omissions giving rise to the claims occurred.

12  ## GENERAL ALLEGATIONS

13  9.    Plaintiff realleges and incorporates herein by reference all of the above

14  paragraphs, inclusive, of this Complaint as though fully set forth herein.

15  10.    Plaintiff is, at all relevant times herein mentioned, a Hong Kong based trading

16  company that specializes in exporting readymade garments, including, but not

17  limited to, athletic wear for all age groups, undergarments for men and women,

18  women's sleepwear, and outerwear for all age groups.

19  11.    Defendant Ascendance is, at all relevant times herein mentioned, a California

20  limited liability company that imports and exports garments and textiles for its

21  clients. Plaintiff is informed and believes, and based thereon alleges, that

22  Ascendance was established by Defendant Mahesh Harwani's father, Mr. Lokesh

23  Harwani. Plaintiff is further informed and believes, and based thereon alleges, that

24  Defendant Mahesh Harwani was appointed its Chief Executive Officer and sole

25  managing member pursuant to Mr. Lokesh Harwani's instruction. For these reasons,

26  Plaintiff is informed and believes, and based thereon alleges, that Mr. Lokesh

27  Harwani is also the agent and/or employee of Ascendance, and was, at all times,

28  4855-5498-0688.1                                                3

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  acting within the purpose and scope of such agency and/or employment.

2       A. **Terms of Defendants' Oral Agreement with Plaintiff**

3  12.    In 2018, the Parties entered into a verbal agreement (the "Agreement")

4  pursuant to which Plaintiff would provide banking and document negotiation

5  services in order to facilitate the exportation of various garments purchased by

6  Defendants.

7  13.    Specifically, the Parties verbally agreed that Ascendance would submit

8  purchase orders for specific garments to a supplier by the name of Asian Marl

9  Company Limited ("AMCL"). Plaintiff would provide banking and document

10  negotiating services via its bank, the Tsim Sha Tsui Branch of HSBC Bank

11  ("HSBC"), at a commission rate of four percent (4%) of the invoiced amount for

12  each purchase. Plaintiff would pay AMCL the invoiced amount for each purchase

13  after deducting its four percent (4%) commission. Plaintiff would thereafter instruct

14  HSBC to finance the invoiced amount via issuance of a Bill of Exchange to

15  Ascendance. Ascendance's acceptance of said Bill of Exchange was subject to the

16  condition that Ascendance would repay the full financed amount by instructing its

17  bank, the El Monte, California branch of Cathay Bank ("Cathay"), to remit payment

18  to HSBC.

19  14.    From 2018 through 2020, the Parties would transact their business as follows:

20      a.    Ascendance would submit purchase orders to AMCL for various

21  garments.

22      b.    AMCL would ship the purchased garments to Ascendance and would

23  provide Plaintiff with the corresponding original Export Invoice and Bills of Lading.

24      c.    Next, Plaintiff would instruct HSBC to issue an Export Documentary

25  Credit (DC) Bill Negotiation/Trade Collection Instruction ("Bill of Exchange"),

26  which contained a "documents against acceptance" ("D/A") provision. According to

27  the D/A provision, Ascendance could take possession of the shipped garments only

28  4855-5498-0688.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

after signing the Bill of Exchange. By signing the Bill of Exchange, Ascendance agreed to pay the full invoiced amount by the maturity date of 120 days of acceptance of the Bill of Exchange ("Maturity Date").

       d.     The following documents were annexed to each Bill of Exchange:

            i.  Packing List, which contained the garments' description, quantity, container number, and seal number; the estimated time of departure; estimated time of arrival; vessel number, and other relevant details of the consignment.

           ii.  Single Country Declaration, which certified the country of origin of the purchased garments.

          iii.  Bill of Lading, which corresponded with each Export Invoice; and

          iv.  Marine Insurance Policy;

       e.     HSBC would send the Bills of Exchange with the aforementioned attachments to Cathay.

       f.     Upon receipt of the Bill of Exchange, Ascendance would instruct Cathay to issue payment to HSBC by the Maturity Date to satisfy the credited amount. Additionally, Cathay would issue to HSBC written notification ("Cathay Acceptance") that would confirm receipt of the Bill of Exchange and calculate the Maturity Date. Simultaneously, HSBC generated and sent to Plaintiff its own Export Collection Acceptance Advice ("ECAA"), a document confirming Ascendance's acceptance of the credited amount and the Maturity Date for payment of said amount.

       g.     Once HSBC received the confirmation from Cathay, it would release the Bill of Exchange and credit in the amount of the invoiced price of the garments, minus the applicable bank charges, into Plaintiff's account, on the condition that Ascendance would pay HSBC the invoiced amount by the Maturity Date.

4855-5498-0688.1

5

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

h.    Based upon the amount credited from HSBC, the Plaintiff would deduct its 4% commission for its banking and document negotiation services and issue the remainder of the purchase price to AMCL subject to the condition that Ascendance would reimburse Plaintiff for the full purchase amount on or before the Maturity Date.

i.    Finally, Ascendance would issue payment to HSBC via Cathay by the Maturity Date, thereby fulfilling its obligation of repayment for the purchased garments.

15.    In sum, from 2018 through 2020, the Parties continued to follow the terms of the Agreement by conducting business via the aforementioned procedure.

**B. <u>Ascendance Defaults on Promised Payments to Plaintiff</u>**

16.    In 2021, Defendants began a pattern of nonfulfillment of its obligation to repay the credit extended to Ascendance by HSBC.

17.    Specifically, between December 20, 2021, and June 22, 2022, Ascendance placed fourteen (14) separate purchase orders ("Subject Orders") for garments to AMCL. The invoices evidencing the Subject Orders are attached hereto as **Exhibit** ("Ex.") **A** and are incorporated herein by reference. Each of the invoices for the Subject Orders states the products at issue were "sold by order and for account and risk of" Ascendance. *See id.*

18.    Pursuant to the Parties' Agreement and in reliance on the Parties' previous business transactions as described herein, upon receiving each of the invoices for the Subject Orders, Plaintiff instructed HSBC to issue to Ascendance a Bill of Exchange, which included as attachments the corresponding Packing Lists, Single Country Declarations, Bills of Lading, and copies of the Marine Insurance Policy. True and correct copies of the fourteen (14) Bills of Exchange ("Subject Bill of Exchange") and corresponding attachments are attached hereto as **Ex. B** and are incorporated herein by reference.



COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED

19.    By issuing the Subject Bills of Exchange to Ascendance, HSBC extended credit in the amount of the purchase price of the garments. Each of the Subject Bills of Exchange listed Plaintiff as the "Beneficiary" and "Drawer" of the credit line extended by HSBC and Ascendance as the Applicant and "Drawee" of the credit amount. Ex. B at ¶¶ 5.1, 5.4.[1] Additionally, each of the Subject Bills of Exchange included a D/A provision, which required Ascendance to remit payment via Cathay to HSBC by the Maturity Date. *Id.* at ¶¶ 13.1.

20.    Plaintiff subsequently received fourteen (14) Cathay Acceptances ("Subject Cathay Acceptances") for each of the Subject Bills of Exchange, confirming receipt by Ascendance and establishing the corresponding Maturity Dates. True and correct copies of each of the Subject Cathay Acceptances are attached hereto as **Ex. C**.

21.    Plaintiff also received from HSBC fourteen (14) ECAAs ("Subject ECAAS"), which further confirmed that Plaintiff received each of the Subject Bills of Exchange and established the Maturity Dates for the corresponding amounts. True and correct copies of each of the Subject ECAAs are attached hereto as **Ex. D**.

22.    In direct violation of the Parties' Agreement, Ascendance failed to repay the amounts credited by the Subject Bills of Exchange and, despite repeated requests by Plaintiff, refuses to pay those charges, in whole or in part.

23.    Specifically, the total amount credited by the Subject Bills of Exchange to Ascendance is $1,211,659.32, plus interest. For further clarity, an itemization of each unpaid Subject Bill of Exchange is provided in the table below:

| Invoice Date | Invoice Number | Amount Credited by HSBC in USD $ |
|---|---|---|
| December 20, 2021 | CH2021K23 | $121,615.20 |
| December 21, 2021 | CH2021K24 | $38,486.64 |

---

[1] The paragraph references in each of the Subject Bills of Exchange are identical and contain the same terms. For the sake of brevity, Plaintiff does not include citations to each of the 14 Subject Bills of Exchange separately.

COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| January 4, 2022 | ST2021L11 | $75,270.48 |
| February 17, 2022 | CH2022A10 | $123,485.22 |
| March 7, 2022 | CH2022B26 | $42,702.96 |
| March 15, 2022 | CH2022C06 | $47,264.64 |
| April 28, 2022 | ST2022D16 | $98,814.48 |
| May 3, 2022 | CH2022D23 | $113,477.76 |
| May 3, 2022 | RM2022D23 | $96,104.40 |
| May 20, 2022 | RMCH2022E12 | $88,382.46 |
| June 1, 2022 | RMCH2022E17 | $58,975.44 |
| June 1, 2022 | ST2022E22 | $116,890.20 |
| June 15, 2022 | ST2022F02 | $91,497.00 |
| June 22, 2022 | RMCH2022E31 | $98,692.44 |
| **TOTAL** | | **$1,211,659.32** |

24.    As a result of Ascendance's nonpayment of the foregoing credited amount, Plaintiff has been greatly and substantially prejudiced. Specifically, HSBC has deducted the credited amounts from Plaintiff's account and charged Plaintiff additional fees for late payment of each of the Subject Bills of Exchange. Accordingly, Ascendance's nonpayment has put Plaintiff in extreme financial peril.

25.    Plaintiff would never have instructed HSBC to extend the Subject Bills of Exchange to Ascendance had Ascendance not promised to repay the credited amounts to HSBC by the applicable Maturity Dates.

26.    Defendants have admitted their failure to pay the outstanding amount. Specifically, Mr. Lokesh Harwani, acting as an agent for Defendants, admitted that the balance owed by Ascendance remains unpaid and falsely promised that Ascendance would begin repaying Plaintiff. A true and correct copy of the email communication, dated December 12, 2022, from Mr. Lokesh Harwani is attached hereto as **Ex. E** and incorporated herein by reference.

27.    Furthermore, when Plaintiff contacted Mr. Lokesh Harwani regarding the outstanding amount, he attempted to coerce Plaintiff to loan him an additional $500,000.00 so Ascendance could revive its business and earn the money to satisfy

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

its payment obligations to Plaintiff. A true and correct copy of the email communication, dated December 9, 2022, from Mr. Lokesh Harwani is attached hereto as **Ex. F** and incorporated herein by reference. Plaintiff again contacted Lokesh Harwani to ask for repayment of the outstanding funds on February 2, 2023. Once again, Mr. Lokesh Harwani replied with an admission that Ascendance owed Plaintiff $1,211,659.33 and a request for $200,000.00 so he could earn the funds to repay Plaintiff. A true and correct copy of the email exchange between Plaintiff and Mr. Lokesh Harwani, dated February 2, 2023 through February 3, 2023, is attached hereto as **Ex. G** and incorporated herein by reference

28.     To date, Defendants have failed to make any payment towards the outstanding balance due pursuant to the Subject Bills of Exchange.

## FIRST CAUSE OF ACTION

### (For Breach of Express Contract Against All Defendants)

29.     Plaintiff realleges and incorporates herein by reference all of the above paragraphs, inclusive, of this Complaint as though fully set forth herein.

30.     In 2018, the Parties entered into the Agreement pursuant to which Plaintiff agreed to pay AMCL the amount invoiced for the Subject Orders less its four percent (4%) commission and to instruct HSBC to finance the full amount of the purchase price of the Subject Orders. In exchange, Ascendance agreed to repay the full credited amount by the Maturity Date, thereby allowing Plaintiff to collect a four percent (4%) profit from each of the Subject Orders. The terms of repayment were expressly delineated in the D/A provisions in each of the fourteen (14) Subject Bills of Exchange. *See* Ex. B at ¶ 13.1.

31.     Defendants' obligations under the Agreement are fair, valid, enforceable, and binding on the Defendants.

32.     Plaintiff has performed all conditions required of it by paying AMCL 96% of the invoiced amount and instructing HSBC to issue a Bill of Exchange to

4855-5498-0688.1

COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Ascendance for each of the fourteen (14) Subject Orders. *See* Ex. B. To the extent
2  any covenants and/or conditions have not been performed by Plaintiff, they have
3  been excused by breach or non-performance by Defendants and DOES 1 through
4  10, inclusive.

5  33.     Defendants, in fact, received and accepted the fourteen (14) Subject Bills of
6  Exchange from HSBC, thereby triggering its obligation to repay the full purchase
7  price of each Subject Order by the Maturity Date. *See* Exs. C and D.

8  34.     Defendants have breached their obligation to repay the credited amounts
9  listed in each of the Subject Bills of Exchange by unreasonably refusing to pay and
10  continuing to withhold repayment funds due and payable to Plaintiff via its bank,
11  HSBC.

12  35.     To date, Defendants have failed to make *any* payment towards the
13  outstanding balance of $1,211,659.32. Furthermore, HSBC has deducted the
14  credited amounts from Plaintiff's account and charged Plaintiff additional fees for
15  late payment of each of the Subject Bills of Exchange.

16  36.     As a direct and proximate result of Defendants' breach, Plaintiff has suffered
17  damages in an amount of $1,211,659.32, plus interest, as well as special or
18  consequential damages in an amount to be determined at trial.

19                              **SECOND CAUSE OF ACTION**

20                    **(Breach of Implied Contract Against All Defendants)**

21  37.     Plaintiff realleges and incorporates herein by reference all of the above
22  paragraphs, inclusive, of this Complaint as though fully set forth herein.

23  38.     To the extent this Court determines that no express contract existed amongst
24  the Parties, Plaintiff alleges that the Parties formed an implied contract based upon
25  their previous business transactions.

26  39.     Specifically, from 2018 through 2020, Plaintiff provided its document
27  negotiation and banking services via HSBC to facilitate the exportation of garments

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

from AMCL to Ascendance. After Ascendance placed an order for garments to AMCL, Plaintiff would pay AMCL 96% of the invoiced purchase price and, thereafter, would instruct HSBC to finance the invoiced purchase price via a Bill of Exchange. During the time frame of 2018 through 2020, Defendants reimbursed Plaintiff in the full amount of the invoiced purchase price within 120 days of receipt of each Bill of Exchange.

40.    Accordingly, the transactions between the Parties established a longstanding business relationship where Defendants would allow Plaintiff to purchase garments from AMCL on credit via Plaintiff's bank, HSBC. An implied agreement existed between Defendants and Plaintiff that Defendants would reimburse Plaintiff, through HSBC, for the full amount credited by each Bill of Exchange accepted by Defendants.

41.    Between December 20, 2021, and June 22, 2022, Defendants engaged in continual breaches of the implied agreement between the Parties by failing to repay the financed amounts indicated in the Subject Bills of Exchange.

42.    Plaintiff, in turn, has performed each and every obligation, condition, and covenant required of it in accordance with the Parties' implied contract based upon prior dealings with Defendants.

43.    Plaintiff has repeatedly demanded that Defendants reimburse Plaintiff the total unpaid credited amount.

44.    Defendants have breached their obligation to reimburse Plaintiff by unreasonably refusing to pay and continuing to withhold reimbursement funds due and payable to Plaintiff.

45.    Furthermore, HSBC has deducted the financed amounts from Plaintiff's account and charged Plaintiff additional fees for late payment of each of the Subject Bills of Exchange.

46.    As a direct and proximate result of Defendants' breach, Plaintiff has suffered

4855-5498-0688.1

11

1  damages in an amount of $1,211,659.32, plus interest, as well as special or
2  consequential damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

3
4  **(Promissory Estoppel Against All Defendants)**

5  47.     Plaintiff realleges and incorporates herein by reference all of the above
6  paragraphs, inclusive, of this Complaint as though fully set forth herein.

7  48.     To the extent this Court determines that no express or implied contract existed
8  amongst the Parties, Plaintiff alleges that Defendants clearly and unambiguously
9  promised Plaintiff that, within 120 days of receipt of each Subject Bill of Exchange,
10 Defendants would repay the financed amount specified therein.

11 49.     In making the foregoing promise, Defendants intended that Plaintiff would
12 pay AMCL the purchase price of the Subject Orders after deducting its four percent
13 (4%) commission and instruct HSBC to extend the Subject Bills of Exchange to
14 Defendants since Plaintiff had done so numerous times from 2018 through 2020. In
15 short, Defendants could foresee that Plaintiff would rely on their promise to repay
16 the amounts financed via the Subject Bills of Exchange.

17 50.     Plaintiff was not aware that Defendants never intended to reimburse it for the
18 funds credited by HSBC. Specifically, since the Parties had conducted business in
19 this manner from 2018 through 2020, Plaintiff justifiably believed it could rely on
20 Defendants' promise to repay the amounts credited by the Subject Bills of
21 Exchange. Therefore, Plaintiff's reliance on Defendants' promise was reasonable.

22 51.     As a direct and proximate result of Defendant's conduct alleged herein,
23 Plaintiff was injured by its reliance on Defendants' promise. Specifically, because
24 Defendants failed to pay the amounts owed under the Subject Bills of Exchange, the
25 outstanding sums were deducted from Plaintiff's HSBC account along with late
26 payment penalties.

27 52.     Defendants are, therefore, estopped from refusing to pay the amount of

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  $1,211,659.32, plus interest, as well as special or consequential damages in an
2  amount to be determined at trial.

3  **FOURTH CAUSE OF ACTION**

4  **(Fraud/Misrepresentation Against All Defendants)**

5  53.    Plaintiff realleges and incorporates herein by reference all of the above
6  paragraphs, inclusive, of this Complaint as though fully set forth herein.

7  54.    Defendants fraudulently misrepresented material facts regarding its intention
8  to repay Plaintiff the amounts financed by the Subject Bills of Exchange.
9  Defendants failed to disclose, concealed, misrepresented and/or suppressed the fact
10 that their representations were false. The following written representations to
11 Plaintiff were made between November 24, 2021, and May 24, 2022, and were
12 made by Defendant Mahesh Harwani and Mr. Lokesh Harwani who was acting as
13 an agent of Defendants.

14     a. On November 24, 2021, Mr. Lokesh Harwani responded to Plaintiff's
15        requests for repayment by stating in an email that Defendant Mahesh
16        Harwani was expecting incoming funds and would begin repayment in
17        December 2021. In the same email, Mr. Lokesh Harwani asked for
18        continued financing from Plaintiff for future orders and an additional
19        loan of $400,000.00. Mr. Lokesh Harwani further promised in this
20        email that he has "huge properties and stocks" and would be able to
21        "settle things." A true and correct copy of this email exchange, dated
22        November 24, 2021, is attached hereto as **Exhibit H** and is
23        incorporated herein by reference.

24     b. On February 9, 2022, Mr. Lokesh Harwani stated in an email that
25        delays in shipment had caused shortage in Defendants' cash flow, but
26        that repayments would begin at the end of February and all outstanding
27        amounts would be paid by April or May 2022. Mr. Lokesh Harwani

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4855-5498-0688.1                                                   13

further stated that Ascendance was expecting a large influx of cash and requested Plaintiff to finance three additional purchase orders. A true and correct copy of this email exchange, dated February 9, 2022, is attached hereto as **Exhibit I** and is incorporated herein by reference.

c.  On February 17, 2022, Defendant Mahesh Harwani cited shipment delays as the cause for Defendants' nonpayment and stated, "while the payments are slow, they will happen as soon as [Ascendance's] clients credit [its] banks." Further, Defendant Mahesh Harwani assured Plaintiff that there would be "minimal disruption between [Ascendance's] banks getting credit and [Plaintiff's] bills being paid." A true and correct copy of this email exchange, dated February 17, 2022, is attached hereto as **Exhibit J** and is incorporated herein by reference.

d.  On February 17, 2022, Mr. Lokesh Harwani responded to Plaintiff's demand for repayment by requesting that Plaintiff continue financing future orders and by promising to repay the financed amount "with interest." A true and correct copy of this email exchange, dated February 17, 2022, is attached hereto as **Exhibit K** and is incorporated herein by reference.

e.  On May 24, 2022, Mr. Lokesh Harwani requested via email that Plaintiff continue to finance its purchase orders and that, starting next month, Defendants would start to repay the financed amounts by the designated due dates. A true and correct copy of this email exchange, dated May 24, 2022, is attached hereto as **Exhibit L** and is incorporated herein by reference.

55.  Plaintiff is informed and believes, and alleges thereupon, that Mr. Lokesh Harwani established Ascendance and, upon his instruction, Mr. Mahesh Harwani

4855-5498-0688.1

14

COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED

was appointed its Chief Executive Officer and sole managing member. Furthermore, Mr. Lokesh Harwani acted as the spokesperson for Defendants and, when referencing Ascendance in his written communications, used the term, "we." *See, e.g.,* Ex. L. Defendants either allowed Mr. Lokesh Harwani to make such statements on their behalf or failed to prevent him from doing so, causing Plaintiff to reasonably believe that Mr. Lokesh Harwani was Defendants' agent and had the authority to confirm on Defendants' behalf that they intended to fulfill their obligations imposed by the Parties' Agreement.

56.    Mr. Lokesh Harwani's and Defendant Mahesh Harwani's representations that Defendants would continue to repay the financed amounts were false when they were made and Defendants knew them to be false. Defendants intended for Plaintiff to rely on these misrepresentations so Plaintiff would continue to finance Ascendance's future purchase orders by instructing to HSBC to issue the Subject Bills of Exchange

57.    Plaintiff reasonably and justifiably relied on Defendant Mahesh Harwani's and Mr. Lokesh Harwani's representations, and such reliance was a substantial factor in causing Plaintiff to continue instructing HSBC to finance Defendants's purchases from AMCL via the Subject Bills of Exchange.

58.    As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered damages in an amount of $1,211,659.32, plus interest, as well as special or consequential damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Common Count – Goods and Services Rendered Against All Defendants)

59.    Plaintiff realleges and incorporates herein by reference all of the above paragraphs, inclusive, of this Complaint as though fully set forth herein.

60.    Between December 20, 2021, and June 22, 2022, Defendants became indebted to Plaintiff in the sum of $1,211,659.32 for banking and document

COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   negotiation services provided by Plaintiff at the request of Defendants for the use
2   and benefit of Defendants.

3   61.   Specifically, Plaintiff instructed its bank, HSBC, to extend the Subject Bills
4   of Exchange to Defendants at the special request of Defendants and for the benefit
5   of Defendants. In return, Defendants were to repay the credited amount to Plaintiff
6   by instructing Cathay to do so within 120 days of receipt of each of the Subject Bills
7   of Exchange.

8   62.   Plaintiff has repeatedly demanded payment from Defendants. To date,
9   however, Defendants have not made any payments towards the outstanding balance.
10   As a result, the sum of $1,211,659.32, plus interest and applicable late payment fees
11   imposed by HSBC, is due and owing to Plaintiff by Defendants.

12   **SIXTH CAUSE OF ACTION**

13   **(For Common Count - Account Stated Against All Defendants)**

14   63.   Plaintiff realleges and incorporates herein by reference all of the above
15   paragraphs, inclusive, of this Complaint as though fully set forth herein.

16   64.   Previous transactions between the Parties establish the relationship of debtor
17   and creditor, namely, that Plaintiff was the creditor and Defendants were the
18   debtors. Specifically, Plaintiff provided funds on credit through its bank, HSBC, and
19   Defendant became indebted to Plaintiff for repayment of those funds.

20   65.   An agreement existed between Plaintiff and Defendants, whether express or
21   implied, on the amount due from Defendants pursuant to the Subject Bills of
22   Exchange issued by HSBC.

23   66.   Defendants have failed to pay any of the funds credited via the Subject Bills
24   of Exchange. Despite Plaintiff's repeated demands for payment, there is now due,
25   owing, and unpaid from Defendants to Plaintiff the sum of $1,211,659.32, plus late
26   payment penalties imposed by HSBC and interest thereon at the legal rate from the
27   date said amounts became due until date of judgment.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For compensatory damages in the amount of at least $1,211,659.32, plus interest thereon at the maximum legal rate and late payment penalties charged by HSBC;

4.    For costs of suit herein incurred; and

5.    For such other and further relief as the Court deems just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a jury trial for all causes of action so triable.

DATED: February 9, 2023          JONATHAN S. PINK
                                 LEWIS BRISBOIS BISGAARD & SMITH LLP


                                 By:      /s/ *Jonathan S. Pink*
                                 Jonathan S. Pink
                                 Attorneys for Plaintiff Crown Import and
                                 Export Ltd.

4855-5498-0688.1

17

COMPLAINT FOR BREACH OF EXPRESS CONTRACT; BREACH OF IMPLIED CONTRACT; PROMISSORY ESTOPPEL; FRAUD/MISREPRESENTATION COMMON COUNT OF GOODS AND SERVICES RENDERED; AND COMMON COUNT OF ACCOUNT STATED